Your Honor, this case on the docket, 2-18-0494, Thomas D. Anderson, plaintiff's attorney. The arrest of the plaintiff's attorney from the lesser claim, defendants. The plaintiff's attorney is ordered to be relocated to a hospital. The plaintiff's attorney is a court-martialed defendant. The plaintiff's attorney is a court-martialed defendant. Arguably wrong, Your Honor. Mr. Daniel C. Sullivan. Mr. Sullivan. Good morning, Your Honors. Good morning. The judge please, the court please. My name is Daniel C. Sullivan. I'm appearing here today on behalf of Thomas D. Anderson. And the cause of action that is at issue is the Illinois Nursing Home Care Act. And we would suggest to you that the basic issue is whether the second amended complaint shows Marion Joy is adequately alleged to operate a nursing home and to state a cause of action in spite of the affirmative matter submitted by Marion Joy in its second motion to dismiss. And a premise, I'm sorry. I was going to ask as a follow-up, doesn't Section 3601 of the Nursing Home Care Act provide that only licensees and owners are liable for injuries to the nursing home residents? If Your Honor please, I completely agree with you on that. And that was part of my oral argument. And we say that we have submitted that. And we have submitted that in our second amended complaint. It's in the affirmative defenses, the affirmative matter submitted by the defendant. And we feel we've amply shown that within the four corners of our second amended complaint. But now we have to apply the definitions of owner and licensee that the legislature gave us in the statute, right? That's what my argument focuses on. Okay. So isn't then the issue here whether Marion Joy is an owner or licensee under those definitions? Yes, Your Honor. That would exactly encapsulate what I felt was the basic issue that I outlined. Okay. So where in this record, for one, is it established that Marion Joy holds a license to operate this nursing home? In the record, Your Honor, we contend we have adequately pled basically because we have pled that Marion Joy is a partner owner of a facility licensed as a nursing home under the Illinois Nursing Home Care Act. Now, partner owner, do you want to indicate where you're relying on the Uniform Partnership Act or what other statute? Well, first of all, they have to be operating under a license. And they admit in the record below they do not have a license. And so we claim a partnership can operate a nursing home under the umbrella of a nursing home license maintained by one of the partners. And the record below, and I don't have the record up here with me, but the record below shows specifically that Providence, the co-defendant, does have a license to operate an Illinois nursing home care facility at 3450 Saratoga Avenue in Downers Grove. Is there a partnership agreement? There is a partnership agreement, and it was submitted as an affirmative matter by the defendants when they submitted their motion to dismiss. And that partnership agreement is a joint venture agreement, Your Honor. And the joint venture agreement is specifically allowed under various statutes in the Illinois Nursing Home Care Act. And in that regard, I would point out 210 ILCS 45-1-106 and Paragraph 5 of our second amended complaint, where we allege that Mary and Joy is an affiliate of Providence. And if you go to that statute, you will find that definition defines as included within affiliate the status of a partner. Is that joint venture agreement a partnership agreement? In this case, it is a joint venture agreement, and under the case that I cite, GE versus Cook County, a joint venture agreement under the laws of Illinois are interpreted solely as partnership under partnership principles. And because of that, the joint venture agreement establishes conclusively that there is a partnership between the two entities. I'm somewhat timid about proceeding. Well, go ahead. If we have questions, if we have questions, we'll ask. I mean, as you know, we're an activist. You cite the definition of affiliate. Well, first of all, you cite the definition of affiliate, right? But affiliate relates back to Section 1-119, who's an owner, correct? Yes. The statute does not say that an affiliate is liable. The statute says an owner or a licensee is liable. That is correct, but if you look at 1-119, a partner falls within the definition of an owner. Where? Well, I don't have the statute. I have it right here. I have it right here. Take a look at it. It's highlighted. So tell me where a partner should be. You accept that if the person who owns the physical plant is an affiliate of the person who operates the facility. And in that particular instance, if you have an affiliation, which we do here. Well, go ahead. It says the person who owns the physical plant is an affiliate. So it's limited to the person who owns the physical plant. And clearly Mary Joy does not own this physical plant, correct? You can argue that, Your Honor, and I disagree with you. I would argue that is not so. And if we have an affiliation such as the partnership agreement, then both entities at that facility are partners. And under the partnership agreement, they're jointly and severally liable. And I'd further point out that the record clearly shows that Mary Joy operates out of that facility and conducts an operation. And that facility is a nursing home and can only be operated as a nursing home. In my brief, I pointed out there are statutes that disallow a hospital operating out of that facility. So because there is a hospital operating out of that facility, I mean because there can't be a hospital operating out of that facility, we have to assume that Mary Joy is operating lawfully. If you look at 210 ILCS 45-3-102, a party cannot hold themselves out, advertise or perform nursing home services out of a facility unless they're licensed. And the only way you can have a license here is because Providence has a license, and they are operating jointly under the agreement which I pointed out to Justice Pence. And so for that reason, there is a partnership here, and partnerships are allowed under the statute in order to qualify to operate a nursing home. But Mary and Joy provide services at the nursing home that Rest Haven or Providence operates, isn't that? I'm sorry, I'm 70, I can't hear very well. You know, the system, is the system on today? It is. Okay, I'll speak louder too, I'm sorry. It's hard with the high ceilings, it's usually weird asking others. I apologize for not being able to hear and being old. Mary and Joy provides services at this nursing home that Providence operates, correct? So it's Mary and Joy that's providing the services, Providence operates the nursing home. Well, they also operate the nursing home, and if you look in the joint venture agreement, it shows that they actually have a separate department where they control and they provide rehabilitation. Now, Mary and Joy would argue that rehabilitation is some sort of hospital operation, which lawfully can't be provided at that nursing home. But we would suggest that the sole and basic purpose of a nursing home under the Illinois Nursing Home Act is the provision of rehabilitation, the providing of rehabilitation. And in my briefs, and I can cite here to you because I have them written down, there are 11 statutory references that outline that a nursing home provides rehabilitation. Furthermore, if you look in the 10 statutes that are in the Illinois Nursing Home Care Act, they adopt the federal regulations and statutes by reference, and those particular statutes that the federal government has handed down say that one of the principal operations that are conducted in a nursing home are rehabilitation operations. So what they are providing there is a nursing home operation, and there's two ways that this court, this panel can have it. They can either have it that Mary and Joy is in there in direct unlawful operation, contrary to the citation that I gave you, 210 ILCS 45-3-102, or this court can decide that a partnership is a bona fide legal entity, a legal method of operating a nursing home, and in that particular instance, the complaint and the joint venture agreement and everything on this record shows that they are a partner. They operated as a partner, and a partner is an entity under Illinois law under the Uniform Partnership Act, which imposes joint and several liability. For that, I'm sorry. Go ahead. No, I saw you open your mouth, so I didn't want to interrupt you. Okay. Thank you, counsel. But we still have to come back to, in order to even think about liability, we still have to come back to 45-1-119 and the definitions of an owner. That is one thing you have to do. Right. And so even if you say Mary and Joy is an affiliate of the nursing home, we have to look at the definition in 119. So 119 says that a lessor of the physical plant is considered an owner where, one, the lessor has significant control over the day-to-day operations and is an affiliate of the person who operates the nursing home. So isn't it correct Mary and Joy would have to own the physical building, which it doesn't, or at least the record doesn't indicate that it does, lease it to Rest Haven or Providence under this definition, and have significant control over the day-to-day operations before we even can think of it as an affiliate? And it's only if we get to that point do we then look at the definitions of affiliate, which includes partner. But we aren't there yet, and we can't get there, can we? Well, you can get there if you don't want Mary and Joy in there unlawfully, because they admit they're providing rehabilitation services on those premises. They admit they don't have a license as a nursing home. This law does not allow someone who is unlicensed, the law does not allow someone to provide rehabilitation and nursing home service in a nursing home. They come in with an ersatz argument that they are a hospital, but under the law it's clear that a hospital can only operate at the point it's licensed. It cannot operate out of a nursing home. And furthermore, the Nursing Home Care Act says that a hospital can't operate out of a nursing home. And so what you are suggesting is you interpret 119 as preclusive of any partnership here. You are, in effect, saying that Mary and Joy is unlawfully on the premises, and I suggest to you you can't do that under the law. The law has to assume that there is a lawful operation unless there is actually proof that it's not unlawful, or that it is unlawful. Yes, sir. Does your argument turn on the fact that you're saying that providing rehabilitation services is the same as operating a nursing home? Yes. Yes, sir. And the law doesn't allow them to do anything but a nursing home operation in a nursing home, and I've outlined the statutes that say that. Could this nursing home contract with... You know, there's a lot of private vendors that supply rehab, rehabilitative services. Could they contract with some other private vendor to provide those rehab services? In other words... Forget about Mary and Joy. Let's just say that ACI... Not because you weren't clear, but for my edification, so that I can understand it myself. In other words, could Providence have gone out and said, Hey, Harry, you do rehabilitation. Can I hire you in here either as an independent contractor or as an employee? Let's say independent contractor. My answer is yes, but they didn't do it here. And the joint venture agreement doesn't provide for that. Is that what you're saying? That joint venture agreement, I've been around a fair amount of times. It's a partnership agreement. It's a joint venture agreement. They're jointly and severally liable under Illinois law. And I can see the canyon moving here when you look at 119, but I thoroughly disagree. I think that the statutes, I think the concept of the Illinois Nursing Home Care Act, contemplated a partnership. For example, when they adopted regulations with regard to this particular act, they adopted the term person. And we put in Providence slash Mary and Joy, 14 different paragraphs, to show they were a person, a common person. And under 77 Illinois Administrative Code 300.330, one of the definitions of a person includes a partnership. And that's what we have here. We have a partnership. And under partnership law, we have joint and sever liability. And, of course, as Justice Inhofe said, that's the underpinning of our argument and our case. I mean, it's black letter law that, you know, one co-venture is liable for the exit of another co-venture. I mean, that's black letter law, and that's what you're arguing here. They're partners. They're co-ventures. But the question is whether or not these partners are both owners or licensees. Well, I can turn it around, Your Honor, even though my time is up, and say that a partner is jointly and severally liable. Both of them are owners when we sue them severally under the partnership law. Okay. No, thank you. Okay, you'll have time on rebuttal. Thank you, Your Honor. I certainly didn't get to fill all of my outlines. Thank you. Mr. Sulfa. Counsel. Counsel. Your Honor, as you may please the Court, I'm here on behalf of Mary and Joy and their status as an appellee as it relates to a motion to dismiss, which was granted in the lower court. Plaintiff has made a conscious decision to plead a cause of action against Mary and Joy solely based upon the Illinois Nursing Home Care Act. Please keep your voice up. It may seem like you're yelling, but we need to, the ceiling is high and we all need to hear, so. I apologize. Speak a little louder, please. So plaintiff has made a conscious decision to plead a cause of action against Mary and Joy solely based upon allegations relating to the Illinois Nursing Home Care Act. Could you answer the question that I asked, Counsel, and that is, is providing rehabilitation services the same or the functional equivalent of operating a nursing home? Absolutely not. All right, why not? Well, if you look at the Illinois, if you look at the Nursing Home Care Act, it doesn't state anything about that. It states that certain services can be provided, but that's set forth in various things that can be done in a nursing home. The Nursing Home Care Act sets forth specifically who an owner is, who an operator is, the types of services that can be provided in a nursing home, and it goes back down to 1-1-1-9, which defines what an owner is. So the owner is the individual, the partnership, the corporation, the association, or the person who owns the facility. It's undisputed here that Mary and Joy does not own the facility. It's undisputed that Mary and Joy does not maintain a license for the facility. In fact, if you go to the Joint Venture Agreement, which I would point out as an aside, it seems that plaintiff's complaint is based on that under 2606. It should have been attached to the complaint. It was not. But in any event, the Joint Venture Agreement itself sets forth that Rest Haven must maintain all licensure, accreditation, and everything related to being a nursing home under the Illinois Nursing Home Care Act. That is the responsibility of Rest Haven, not of Mary and Joy. All Mary and Joy is doing is providing a program, and the Joint Venture Agreement relates to a program pertaining to rehabilitation services. I would ask your honors to think about it like this. Everybody's been to a hospital, and everybody's had diagnostic studies in terms of radiology tests performed on them. Everybody knows that there's a radiology department within that hospital. The radiology department and the hospital form an agreement so that the radiology department provides services to the hospital in terms of the radiology diagnostic tests and things in that regard. They're usually maintained in a separate part of the hospital location. So you are in the hospital. You get taken out of your room. You go have the radiology services performed. You're brought back to your room. That doesn't make the radiology group an owner or a licensee of the hospital. They simply have a contract to provide services, which is all this Joint Venture Agreement is. It's a contract for Mary and Joy to be able to provide services in the form of rehabilitation to residents at the nursing home operated and owned by Providence slash Rest Haven. So if Mary and Joy operates and owns this program that's described in this Joint Venture Agreement, and the nursing home then furnishes the facility for that purpose, then why, as counsel argued, isn't Mary and Joy a partner? And as a partner, therefore, an owner in this nursing home operation, at least with respect to the patients that receive these rehab services? Well, they are not an owner. They have no ownership interest at all in the facility. The Joint Venture Agreement just allows them to provide rehabilitation services at that facility. Well, it gives them certain management responsibilities as well. They have co-presidents of this program. I mean, there's a lot more to this than just come in and provide services. It only relates to the program itself, though, in terms of the co-management. It has absolutely nothing to do with the day-to-day operations of the nursing home facility. All this agreement relates to is the provision of rehabilitation services. If you look at it, you can even look at the insurance and indemnification portion of the agreement, which indicates that Rest Haven is going to maintain, at its own expense, property insurance coverage for the equipment, supplies, and premises of the facility. Mary and Joy, in turn, according to this agreement, is only providing appropriate professional liability insurance for its participation in the program at the facility. So, I mean, it's contemplated in the agreement itself as to what Rest Haven is responsible for. Rest Haven is also contemplated in the agreement as the one that's going to employ the nurses and the support personnel required to operate the program. Mary and Joy is only employing the clinical employees, which in this case would be things such as speech pathologists, physical therapists, occupational therapists. It's the therapy people that Mary and Joy is employing. Who transports or provides that the patients get to the Mary and Joy area? That's Rest Haven. That's set forth in Section 4.2.6 of the Joy Venture Agreement. So the person pushed in the wheelchair... Was actually a Rest Haven employee. ...is a Rest Haven employee. And is that always the case? That's always the case. Unless you're actually inside the rehab portion where you might be going from, you know, some parallel bars to the wheelchair. You're going to have to, of course, have standby assists and things in that regard to be able to allow the patient to participate in the rehab once you are in the rehab portion of the facility. But Rest Haven sees that the patients get to the services. Rest Haven is the transporters. They're the ones who employ... That's set forth by the employees. They employ the nurses and the support personnel required to operate the program. And in this particular case, it is rather somewhat important, I guess, that if you look at the allegations of the complaint, this occurred when the patient was being transported in the wheelchair. It's not alleged in the complaint, but that was actually an employee of Rest Haven that was doing that at the time. And where in the record is that indicated? It's not. It was just in response to a question by Justice Spencer. So the record doesn't indicate who the employee was employed by, does it? In terms of the complaint itself. Pardon? In terms of the complaint itself, you're asking? Or the actual medical records. Any place in the record that we have in front of us. In the record that you have, there's no indication because no medical records are submitted. And the only thing that we have in the complaint is the allegations that paragraph 16, it just says a Providence slash Marion Joy employee instructed Mr. Anderson. That could be either one. Right. But in response to Justice Spencer's question, I think it would ultimately be undisputed that it was actually a Rest Haven employee. But you're saying the agreement provides that the Rest Haven employees take them to services. That's correct. It says for the employees of Rest Haven, employees in section 4.2.6, Rest Haven is employing the nurses and support personnel required to operate the program. Marion Joy simply employs clinical employees, which is also defined in the agreement. And the clinical employees are defined as physical therapists, physical therapy assistants, occupational therapists, occupational therapy assistants, speech therapists, speech language pathologists. But we don't know in terms of really their procedure there whether if somebody was due to have therapy, it was the therapist himself or herself who actually walked down to the patient's room and took them there, do we? I mean, is that indicated in any place? That's not indicated in the plaintiff's complaint. There's been no actual fact discovered. I think that's completely irrelevant to this point of whether or not Marion Joy can be found to be liable under the Illinois Nursing Home Care Act. True. But I was just trying to clarify what our record shows or doesn't show. Oh, sure. I appreciate that, Judge. I believe that the record, if this does proceed against Marion Joy ultimately, would show that it was a Rest Haven employee. Based upon my knowledge of the situation and my review of materials, obviously, you don't have. But, again, I don't believe that's even relevant to what we're discussing here as it relates to the applicability of the Illinois Nursing Home Care Act. You need to focus on whether the joint venture agreement somehow makes Marion Joy subject to the Illinois Nursing Home Care Act in this case. It's not disputed that Rest Haven Providence operates the nursing home, is the licensee of the location, and is the owner and the operator of the location. There's nothing in the joint venture agreement which sets forth that Marion Joy somehow has an ownership interest in the location or somehow has to maintain a license at the location. But a joint venture legally, I think you've indicated and agreed, is treated like a partnership. Isn't that correct? Well, it can be treated as a partnership on a limited purpose. This would be a partnership as it relates to the program, not a partnership as to the facility itself. This is a partnership as to a program of rehabilitation, provision of rehabilitation services. There's nothing in this joint venture agreement which says we are going to be partners as it relates to the day-to-day operations of a nursing home facility. But it was a patient of the program who was injured. Isn't that right? Well, it was a patient at the nursing home. The patient was not receiving rehabilitation services, and that you can actually see from the complaint itself, which your honors do have. The patient was sitting in his room and was being transported. And it does not say in terms of the allegations he was being transported to be weighed. His weight was being taken. So you're talking about when the injury happened, I was referring to he went to this facility for the rehab services offered by Marion Joy. Isn't that correct? Well, that's based upon his affidavit that was attached. He chose this particular nursing home because he wanted to receive rehabilitation services from Marion Joy because Marion Joy was the provider of rehabilitation services pursuant to the joint venture agreement in terms of the program. Now, he would have had to go to an inpatient nursing facility somewhere. So you have to do outpatient therapy, in which case he would have actually gone to the hospital location at Marion Joy in Wheaton to receive outpatient therapy services. However, he was required to be an inpatient at a nursing home. In that regard, Marion Joy has agreements with Providence with the joint venture agreement to be a provider of rehabilitation services pursuant to a program. That's all the joint venture agreement covers is the program for rehabilitation services and various facilities, not only the one where this particular individual was, but there's three or four different locations. So when you look at it that way, if he was an inpatient at this nursing home facility, who tangentially was also receiving some rehabilitation services? So if he was injured by, as you say, an employee of the nursing home, why shouldn't Marion Joy be vicariously liable given the agreement that they had? Given the joint venture agreement? Because it specifically sets forth in the joint venture agreement that you are not going to be liable for any negligence on the parts of employees of the other entity. I have that right here. It is, I can't find the specific thing right off the top of my head here, but it says that you're not going to be liable for the actions of the employees of the other entity. But I would also point out, though, that it sets forth numerous things in terms of what the program functions are going to be and what the responsibility of Rust Haven is as it relates to the program. All this agreement sets forth is a program for rehabilitation services and who the responsibilities are. Does it establish it as an affiliate? Does it establish it as an affiliate? Affiliate. It does not define, the joint venture agreement does not define Marion Joy as an affiliate per se in this case. Even if it did define it as an affiliate, still they are not an owner of the facility. They don't own this facility. They have no ownership interest. They have zero applicability as far as the day-to-day operations of the nursing home itself. All this joint venture agreement is for is to define the terms of the rehab services that are going to be provided on a sub-acute basis. That's it. And it's very specific in that regard. It even says in here that Rust Haven Providence is the one who has to maintain the nursing home license. The one who owns the facility has to maintain the facility, has to do everything else leading the facility. The only thing that Marion Joy is responsible for as it relates to this particular agreement is as it relates to rehabilitation services that are being provided to patients who are admitted to this nursing home facility. These patients are not admitted to Marion Joy. They're admitted to Providence Rust Haven as an inpatient. And you can see for billing, Rust Haven is even responsible for billing and collecting all services, even provided in the program, except for physician services. So, I mean, Rust Haven is in charge of everything here as it relates to the day-to-day operations, the billing, everything else. The only thing that this agreement sets forth is that Marion Joy is providing some rehabilitation services to inpatients at this particular facility, which is owned, operated, and the licensee is Providence Rust Haven. That's it. And Marion Joy simply is not an owner. They have zero ownership interest in the facility. And as it relates to the plaintiff's affidavit that was submitted and is attached to this part of the record that the court had, it really does not matter what the plaintiff thought the relationship was between Marion Joy and Rust Haven. That may be relevant to an agency relationship. This isn't an agency situation. The plaintiff is trying to assert that Marion Joy should be directly liable under the Illinois Nursing Home Care Act. So what the plaintiff thought about the relationship between Marion Joy and Providence has actually no bearing as to whether or not Marion Joy can be found legally liable under the Illinois Nursing Home Care Act as an owner or licensee of the facility, which they simply were not. Actually, the plaintiff cites a definition of joint venture in one of the briefs that was submitted by a plaintiff to this court. And that sets forth that a joint venture is a business undertaking by two or more persons engaged in a single defined project. In this case, the single defined project was the provision of physical rehabilitation services and programs only. That's it. That was the joint venture entered into by Marion Joy and Providence in this particular case and does not subject Marion Joy in any way to be liable under the Illinois Nursing Home Care Act. I know my time is up, so I'm open to any other questions. One quick question. I believe in one of the arguments in the plaintiff's brief is that the trial judge raised this issue suisconte. Okay. Do you agree with that? I think the trial judge looked at everything that was submitted to her, including the joint venture agreement, which was attached to the pleadings. Did you argue below that you were not an owner or a licensee? We argued that the Illinois Nursing Home Care Act is not applicable to Marion Joy. And so in that regard, the lower court made its own determination as to how the Illinois Nursing Home Care Act is not applicable to Marion Joy in this particular case, which was the basis of our entire argument to begin with, is that the Illinois Nursing Home Care Act is not applicable. Okay. Thank you very much. Thank you for your time. Thank you. Mr. Sullivan? Yes, ma'am. Justice Burke, I had a chance over the intervening 15 minutes to look at 119. And I would point out that under 119, owner means partnership who owns a facility. I would also point out in your language, which you've outlined, you accept that if the person who owns the physical plant is an affiliate of the person who operates the facility and has significant control over the day-to-day operations of the facility. Now, in answer to your question, I have analyzed the joint venture. I must have taken four or five pages analyzing it. I'm not going to go back over it. But the owner of the facility is one of the defendants here, and the owner of the facility is in partnership and affiliation under the joint venture agreement with this defendant. And owner means, under the statutes and the regulations I pointed out, owner means a partnership that owns a facility. If they control the facility, as I pointed out, under 77 Illinois Administrative Code 300.330, as an operator, they control, they maintain, and they govern the facility. I analyzed that joint venture agreement, and they operate that facility, at least part of it. They have a specific department that they operate. They're solely controlling the rehabilitation, which is a Nursing Home Act function. And they are in governance, because no decisions are made at that facility unless the presidents of both organizations get together and say, Howdy, we agree, you can do that. And if they can't agree to it, then it has to go to the board of directors of the various companies. So what I'm suggesting is that you want... You mean if Russ David decided to put a new roof on the building? They'd have to... They'd have to go to Mary Jo and ask for it. I suggest under that joint venture agreement, they own, they control, they operate that facility together. Would any joint venture agreement that provides any services apply to your definition of an owner? For instance, if either a person or a company provided art therapy to the residents, would that person be an owner of the nursing home? If there is no agreement, and if they are a partner, yes. If there is an agreement such as here, the agreement would set it out, and the agreement here is they share and share alike. They also point out, under that particular agreement, the facility that came in there, Providence got it back. The investments that this partner, Mary Jo, made, they get it back. But if they jointly bought it, they both jointly own it. So yeah, they're an owner. And share and share alike when they divide the revenue and they divide the losses. So a joint venture agreement operates a facility, share and share alike. A partner operates a facility. They jointly control that facility because both presidents have to agree on an annual budget. A partnership during a joint venture owns, controls, operates that facility wholly and otherwise, Judge. If you put a tortured reading on this without looking at the rest of the statutes involved, what you will have here is you have Mary and Jo operating at that facility unlawfully. They don't have a license. But you're talking about owning the facility. Facility has, that's also a word of art here, and the facility is a building. So we're talking the joint venture agreement is for a program, not the building. But now you're talking about lease versus usage in a partnership, and I suggest to you, Your Honor, that the usage of a building subject to a lease can have joint and several liability, and that's what we've argued in our complaint. And I'm done except for questions. Thank you. Okay. Thank you very much, Counsel. Let me get Justice Hope. I stole your notes. I gave your notes. Thank you. Okay. All right. Thank you very much, Counsel, for your arguments. The Court will take the matter under advisement and render a decision in due course.